FILED

2005 Apr-19  PM 12:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| SYBILE LILLY, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 04-J-2829-S |
| | § | |
| OCWEN FEDERAL BANK, FSB, | § | |
| et al., | § | |
| | § | |
| DEFENDANTS. | § | |

## MOTION TO REMAND

COMES NOW the Plaintiff, Sybile Lilly (hereinafter "Plaintiff"), and respectfully requests this Court to remand the above-styled cause of action back to the Circuit Court of Shelby County, Alabama, pursuant to 28 U.S.C. § 1447. As grounds for this request the Plaintiff states that this District Court lacks subject matter jurisdiction over the present controversy because complete diversity does not exist and the amount in controversy does not exceed $75,000. Further, federal question jurisdiction does not exist, the Plaintiff's claims are not preempted by federal law and the adjudication of the Plaintiff's claims does not require the resolution of any substantial question of federal law.

### FACTS

1.      The instant action was filed in the Circuit Court of the State of Alabama for Shelby County on August 5, 2004. (See Complaint, a true, correct, and authentic copy of which is attached hereto as Exhibit "A").

2.      The Plaintiff is an individual over the age of 19, is a resident of Shelby County, Alabama, and is a citizen of the State of Alabama. (Complaint, Exhibit "A").


EXHIBIT
2

3.    The following Defendants were specifically named in the Plaintiff's original Complaint:

> (a) Malone-Gordon Mortgage & Investments, Inc. (hereinafter "Malone-Gordon");
>
> (b) Moss, Codilis, Stawiarski, Morris, Schneider & Prior, L.L.P. (herinafter "Moss Codilis"); and
>
> (c) Ocwen Federal Bank, FSB (hereinafter "Ocwen").

(Complaint, Exhibit A).

4.    Malone-Gordon is a corporation doing business in Alabama and is an Alabama corporation.  (Complaint, Exhibit "A").

5.    Moss Codilis is a limited liability partnership and is a citizen of several states other than the State of Alabama.  (Notice of Removal).

6.    Ocwen is a "federally chartered thrift" and is a citizen of the State of Florida.  (Notice of Removal).

7.    Ocwen removed this case on September 27, 2004.  (Notice of Removal).

## STANDARD

"Federal courts are courts of limited jurisdiction" and "only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States." Newman v. Spectrum Stores, Inc., 109 F.Supp. 2d 1342, 1344-5 (M.D. Ala. 2000) (citations omitted). "On a motion to remand, the removing party bears the burden of showing that the federal court has jurisdiction to decide the matter." Clark Const. Group v. Hellmuth, Obata & Kassabaum, Inc., 286 F.Supp. 2d 1348, 1349 (M.D. Fla. 2003). Consequently, "the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear." Love v. Fortis Benefits Ins. Co., 120 F.Supp.2d 997, 1000 (M.D. Ala. 2000). "It is well established that removal statutes are to be strictly construed against removal." Miles v. Kilgore, 928 F.Supp 1071, 1075 (N.D.Ala. 1996).

## ARGUMENT

The Plaintiff in the present action filed a Complaint in Shelby County, Alabama, asserting claims actionable under Alabama statutory and common laws against several Defendants, including a citizen of the State of Alabama. (Complaint, Exhibit "A"). More specifically, the Plaintiff has pled the following causes of action: fraud, suppression, negligence wantonness, intentional infliction of emotional distress, reimbursement for money paid, defamation, and conspiracy. (Complaint, Exhibit "A"). The foregoing causes of action are clearly grounded in state law.

Nevertheless, Ocwen has represented to this Court that the present action should be removed to this District Court on both diversity jurisdiction and federal question jurisdiction grounds. (Notice of Removal).

The Plaintiff will show, however, that this Court lacks subject matter jurisdiction over the present controversy on any of the grounds asserted by Ocwen in its Notice of Removal. (Notice of Removal). The Plaintiff therefore requests that this Court grant her Motion to Remand.

I.   THIS COURT LACKS DIVERSITY JURISDICTION OVER THIS MATTER.

A.   **Diversity jurisdiction cannot be established in the present action because the Plaintiff and a named Defendant are both citizens of the State of Alabama.**

The Plaintiff in the instant action is a resident of Shelby County, Alabama, and is a citizen of the State of Alabama for purposes of diversity jurisdiction under 28 U.S.C. § 1332. Malone-Gordon, a Defendant in the present matter, is also an Alabama resident. (Complaint). Nevertheless, Ocwen alleges that diversity jurisdiction exists because Malone-Gordon was not served at the time of removal and because Malone-Gordon "has been fraudulently joined in this action." (Notice of Removal).

### 1.    Unserved defendants are considered for diversity purposes.

Ocwen states in its Notice of Removal that unserved defendants are not to be considered for diversity purposes. This is simply untrue. Alabama district courts have consistently held that the citizenship of unserved defendants is to be considered for removal purposes. Everett v. MTD Products, Inc., 947 F.Supp. 441, 443-44 (N.D.Ala. 1996); Partin v. Cableview, Inc., 948 F.Supp.1046, 1048 (S.D.Ala. 1996); Burke v. Humana Ins. Co., 932 F.Supp.274, 275 (M.D.Ala. 1996); Beritiech v. Metropolitan Life Ins. Co., 881 F.Supp. 557, 560 (S.D.Ala. 1995); Roberts v. Webster, 1995 WL 908688, *4 (N.D.Ala. July 10, 1995); see also Pullman Co. v. Jenkins, 305 U.S. 534, 541 (1939) ("[T]he fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant."). Thus, even though Malone-Gordon had not been served at the time of removal, its citizenship is still considered for purposes of removal. Since Malone-Gordon is considered a resident of Alabama, complete diversity does not exist and, therefore, this Court lacks diversity jurisdiction over this matter.

### 2.    Defendant Malone-Gordon has not been fraudulently joined in this matter.

Ocwen claims that Malone-Gordon, an Alabama citizen, was fraudulently joined in this action. A defendant alleging fraudulent joinder has the burden of proving that either "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently plead jurisdictional facts to bring the resident defendant into state court." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). "Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court." Pacheco de Perez, 139 F.3d at 1380. The district court is to evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainty about applicable law in favor of the plaintiff. Id.

Ocwen has alleged that the Plaintiff has fraudulently joined Defendant Malone-Gordon in this matter in order to defeat diversity jurisdiction. It states that the longest statute of limitations applicable to the Plaintiff's claim is six years (for breach of contract) and, as a result, there is no possibility that the Plaintiff can prove a cause of action against Malone-Gordon. In reaching such a conclusion, however, Ocwen has ignored the tolling provision for fraud, the Plaintiff's allegations of conspiracy, and the proper statute of limitations for breach of contract.

First, the Plaintiff has alleged that the Defendants engaged in fraud with respect to her loan. Under Alabama law, an aggrieved party has two years from the date of the discovery of the fraud to bring an action for fraud. Ala. Code § 6-2-3. Thus, the statute of limitations is tolled until the discovery of the fraud.

In addition, the Plaintiff has alleged a conspiracy amongst the defendants to wrongfully obtain monies from the Plaintiff. "Any defendant who participates in a civil conspiracy is liable for the damages sustained by the plaintiff as a result of the conspiracy, regardless of whether the defendant profited from the conspiracy." APJI 43.02; see also Buford v. State of Alabama, 2004 WL 595332, at * 4 (Ala.Crim.App. Mar. 26, 2004) (stating that conspirators "are each responsible, civilly and criminally, for everything which may consequently and subsequently result . . . .") (citations omitted); Eidson v. Olin Corp., 527 So.2d 1283, 1287 n.1 (Ala. 1988) ("This liability of each member of a conspiracy for the damage resulting therefrom exists whether or not the conspirator profited from the result of the conspiracy.") (citations omitted). Thus, Malone-Gordon is potentially liable for the acts of any of the other Defendants.

The appropriate statute of limitations for a breach of contract under seal is ten years. Ala. Code § 6-2-33. The loan documents signed by the Plaintiff, like most loan documents relating to real property, are signed under seal. The loan documents were executed on August 21, 1997. (See

Mortgage, a true, correct, and authentic copy of which is attached hereto as Exhibit "B"). Thus, the Plaintiff's Complaint was filed well within this ten year limitations period.

Because the Plaintiff states a colorable claim against Malone-Gordon, Malone-Gordon has not been fraudulently joined and is properly considered for the purposes of diversity jurisdiction. Therefore, Plaintiff's Motion for Remand is due to be granted.

**B.**    **The damages claimed by the Plaintiff fall below $75,000.00.**

When a plaintiff seeks an indeterminate amount of damages, "the party seeking to invoke federal jurisdiction bears the burden of proving by a *preponderance of the evidence* that the claim on which it is basing jurisdiction meets the jurisdictional minimum." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003) (emphasis added).

Ocwen lists the verdicts in a number of other Alabama cases alleging different types of fraud and intentional infliction of emotional distress which were well above the $75,000.00 jurisdictional limit for this Court. The specific facts of these cases were not made available to the Plaintiff or this Court. Thus, it is unclear whether the claims asserted in these actions were substantially similar to those asserted in the Plaintiff's complaint or that a similar outcome is possible in the present case. However, Ocwen bears the burden of showing that the Plaintiff's claim meets the jurisdictional minimum by a preponderance of the evidence, which it has not done and cannot do. "[M]ere citation to what has happened in the past does nothing to overcome the indeterminate and speculative nature of [the defendant's] assertion [that the amount in controversy is in excess of $75,000.00]." Federated, 329 F.3d at 809.

Interestingly, Ocwen directs the Court's attention to a similar case filed against Ocwen by the same counsel representing the Plaintiff in this action in which counsel for the plaintiff submitted a petition for attorney's fees totaling over $200,000.00. After years of discovery battles in which

Ocwen repeatedly refused to comply with the court's orders on such discovery, the Circuit Court of Fayette County, Alabama ordered counsel for plaintiffs in that case to submit the "attorneys' fees and expenses of Plaintiffs' counsel incurred as a result of addressing any discovery matter relating to Ocwen's failure to produce requested information." (See <u>Order</u> dated June 18, 2004, <u>Kimberly and Lee Dowdle v. Aurora Loan Services, et al.</u>, CV1999-082, in the Circuit Court of Fayette County, Alabama, a copy of which is attached hereto as Exhibit "C").[1]   The fees and expenses were submitted as ordered.  Thus, the fee application submitted by plaintiff's counsel in that matter has no relevance to the present Plaintiff's claim.

The Plaintiff's "out-of-pocket" damages in this matter are currently estimated to be less than $10,000.00.  The Plaintiff is seeking to also recover damages for mental anguish in addition to punitive damages.  Ocwen cannot show by a preponderance of the evidence that the Plaintiff's claims exceed $75,000.00.  Because the amount in controversy is less than $75,000.00, the Plaintiff's Motion to Remand is due to be granted.

## II.   THIS COURT LACKS FEDERAL QUESTION JURISDICTION OVER THIS MATTER.

### A.   Original subject matter jurisdiction cannot be established in the present case because no federal question exists.

Ocwen contends that the "complaint alleges claims arising under federal law, including the federal Truth in Lending Act ("TILA") . . . and the Fair Credit Reporting Act ("FCRA") . . .", and that federal question jurisdiction therefore exists. (Notice of Removal).  However, the legal theories upon which the Plaintiff bases her claims (namely, fraud and defamation under Alabama state law) are clear on the face of the Plaintiff's complaint.  In fact, the allegations set out in each of the Plaintiff's claims track the elements required for each state law claim under Alabama law.  Plaintiff

---

[1] The court's order was subsequently quashed in conjunction with the dismissal of that action after a compromise settlement of the entire controversy.

intentionally did not plead federal causes of action in her Complaint and does not seek to recover on the basis of any federal law.

Whether a case arises under federal law is determined by the "well-pleaded" complaint rule—"a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). In other words, a case "may be removed based on federal question jurisdiction 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law." Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 854 (11th 1999) (citations omitted). Further, the federal question "must not be asserted as part of an issue that is merely collateral or incidental to a claim that is primarily based in state law." Id. Therefore, "the plaintiff is the 'master of the claim' and may prevent removal by choosing not to plead an available federal claim." Id. "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." Beneficial, 539 U.S. at 6.

A case "arises under" federal law only if federal law "creates the cause of action, or if a substantial disputed issue of federal law is a necessary element of a state law claim." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1373 (11th Cir. 1998). "A right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." Pan Am. Petroleum Corp. v. Superior Court of the State of Delaware, 366 U.S. 656 (1961) (citations and alterations omitted). The federal right or immunity forming the basis of the claim "must be such that the claim will be supported if the federal law is

given one construction or effect and defeated if it is given another." <u>Dunlap v. G&L Holding Group</u>

<u>Inc.,</u> 381 F.3d 1285, 1290 (11th Cir. 2004).

> **1.    None of the rights created under the Truth-in-Lending Act ("TILA")
> and the Real Estate Settlement Procedures Act ("RESPA") are an
> essential element of any of the Plaintiff's claims.**

The Plaintiff has alleged in Count One of her Complaint that the "Defendants failed to

disclose to Plaintiff that Plaintiff would be charged improper or otherwise excessive fees, finance

charges, and/or penalties in connection with Plaintiff's note and mortgage." (Complaint, Exhibit

"A"). Ocwen contends that the duty of creditors to disclose credit terms is created by the Truth-in-

Lending Act ("TILA") and the Plaintiff's claim that defendant failed to disclose fees, finance

charges, and penalties is a claim for a breach of duty provided by the federal Real Estate Settlement

Procedures Act ("RESPA"), 12 U.S.C. 1603. (Notice of Removal).

Alabama Code § 6-5-102 (1993) provides an independent state law basis for the instant

causes of action. Specifically, Alabama Code § 6-5-102 states that ***"[s]uppression of a material fact***

***which the party is under an obligation to communicate constitutes fraud"*** and that the "obligation

to communicate may arise from the confidential relations of the parties or from the particular

circumstances of the case." <u>Ala. Code</u> § 6-5-102 (emphasis added). "Where one person has superior

knowledge of a fact and suppression of that fact will induce another person to take action that he or

she otherwise would not take, the obligation to disclose is particularly compelling." <u>Life Ins. Co. of</u>

<u>Georgia v. Parker,</u> 706 So.2d 1108, 1112 (Ala. 1997). Consequently, the Defendants in this matter

had a duty, independent of any federal law, to disclose all material facts with respect to the subject

transaction. <u>See, e.g.,</u> <u>Parker,</u> 706 So.2d at 1112 (holding that insurer had a duty to disclose to

insureds policy terms and details even though such terms and details were found on face of the

policy where insurer had superior knowledge of subject matter).

9

As evidenced by the terms of the Plaintiff's Complaint, Count One, when read in its entirety, expressly and repeatedly alleges a failure to disclose which is actionable under the statutory and common laws of the State of Alabama. Thus, Count One of the Plaintiff's Complaint has been well-pleaded and states a viable cause of action under the statutory and common laws of the State of Alabama. The rights conferred under TILA and RESPA do not constitute any essential element of the aforesaid claims. Therefore, neither Count One nor any other Count states a claim upon which an essential element of the claim depends on any aspect of federal law.

### 2.    None of the rights created under the FCRA are an essential element of the Plaintiff's claims.

Count Eleven of the Complaint alleges that the Defendants "intentionally, recklessly, wantonly, maliciously and/or negligently caused negative and untruthful information regarding Plaintiff's credit or financial condition to be published to third parties" and *"[t]his information was false and defamatory*." (Complaint, Exhibit "A") (emphasis added). Despite the fact that Count Eleven of the Plaintiff's Complaint clearly sets out a claim for defamation sounding in Alabama tort law, Ocwen contends that Count Eleven "alleges a claim under FCRA." (Notice of Removal). Ocwen's reading of the Plaintiff's claim is clearly incorrect.

Under Alabama tort law, in order to establish a prima facie case of defamation the plaintiff must show "[1] that the defendant was at least negligent, [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm . . . or actionable upon allegations and proof of special harm . . ." Gary v. Crouch, 867 So. 2d 310, 315 (Ala. 2003) (citations omitted).

Count Eleven of the Plaintiff's Complaint makes specific allegations that correspond with each required element to establish a cause of action for defamation under Alabama's tort law. Furthermore, Alabama's courts have consistently recognized causes of action for defamation where

allegations of negligent and/or false credit reporting were averred. See Battles v. Ford Motor Credit Co., 597 So.2d 688, 689, 692 (Ala. 1992) (plaintiff alleged, and court heard, that defendant "slandered him by willfully publishing false information regarding . . . his being in default on the payments under the lease" to a credit bureau); see also Liberty Loan Corp. of Gadsden v. Mizell, 410 So.2d 45, 49-50 (Ala. 1982) (although unsuccessful, court heard plaintiff's cause of action for defamation for publishing false statements that plaintiff was indebted to defendant); Jakob v. First Alabama Bank of Montgomery, 361 So. 2d 1017, 1020 (Ala. 1978) (plaintiff brought cause of action for defamation of credit reputation related to reports submitted to a credit reporting bureau).

Consequently, Count Eleven of the Plaintiff's Complaint has been well-pleaded and states a claim for defamation under the laws of the State of Alabama.  Furthermore, the rights conferred under FCRA do not constitute any essential element with respect to establishing the Plaintiff's defamation claim.

Therefore, Count Eleven of the Plaintiff's complaint does not state a claim over which this Court has original jurisdiction.

### 3.    None of the rights created under the FDCPA are an essential element of the Plaintiff's claims.

Ocwen contends that the duty not to "harass, oppress, or abuse" a person is created by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, and that since Plaintiff has claimed that the Defendants harassed her, she has made a claim under the FDCPA. Ocwen's logic in making this argument is flawed. The Plaintiff's claim clearly states that she is seeking to recover for the intentional infliction of emotional distress caused by the Defendants' harassment. (Complaint, Exhibit "A").

A plaintiff may recover under the tort of outrage in Alabama by proving "(1) that the defendants either intended to inflict emotional distress, or knew or should have known that

emotional distress was likely to result from their conduct; (2) that the defendants' conduct was extreme and outrageous; and (3) that the defendants' conduct cause emotional distress so severe that no reasonable person could be expected to endure it." Callens v. Jefferson County Nursing Home, 769 So.2d 273, 281 (Ala. 2000). As such, Alabama law clearly provides an independent state law cause of action against harassing behavior by a defendant. In addition, Plaintiff's claims of harassment may also support a claim of nuisance. Ala. Code § 6-5-120 ("A 'nuisance' is anything that works hurt, inconvenience or damage to another."); Tipler v. McKenzie Tank Lines, 547 So.2d 438, 440 (Ala. 1989) (stating that a nuisance may consist of conduct that is intentional, unintentional, or negligent).

The Plaintiff's claims clearly state an independent cause of action under Alabama law. As such, no right created under the FDCPA is an essential element of the Plaintiff's claims.

**B.    The Plaintiff's state law claims are not preempted by the Home Owner's Loan Act ("HOLA").**

Ocwen contends that the Home Owner's Loan Act (hereinafter "HOLA") completely preempts the Plaintiff's causes of action stated in Count One of her Complaint. (Notice of Removal).

The mere preemptive effect of a federal statute does not provide a basis for removal. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003); Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 854-55 (11th Cir. 1999). "[C]omplete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court." Blab T.V., 182 F.3d at 854-55. "The doctrine of complete preemeption is distinguished from a simple defense of preemption in that simple preemption is a question of whether a defense is available under federal law, while complete preemption is a jurisdictional question which focuses on

12

Congress' intent to make the cause of action a federal cause of action and removable despite the fact that the plaintiff's complaint identifies only state claims." Hooper v. Albany Internat'l Corp., 149 F.Supp2d 1315, 1320 (M.D.Ala. 2001).

The complete preemption doctrine is an exception to the well-pleaded complaint rule. Aetna Health, Inc. v. Davila, 124 S.Ct. 2488, 2495 (2004). However, "the doctrine is a narrow one, applying only when 'the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim.'" United States Aviation Underwriters, Inc. v. Yellow Freight System, Inc., 296 F.Supp.2d 1322, 1337 (S.D.Ala. 2003) (quoting Caterpillar v. Williams, 482 U.S. 386, 393 (1987); see also Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 856 (11th Cir. 1999) ("[A]lthough the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA [Labor Management Relations Act] and ERISA [Employment Retirement Income Security Act]."). A federal statute is completely preemptive when it provides the exclusive cause of action for the claims brought by the plaintiff. Beneficial, 539 U.S. at 9. Thus, while a federal statute may preempt some state law claims and provide a defendant with a defense to these claims, the same federal statute does not necessarily completely preempt a cause of action making removal on this basis permissible.

HOLA has not been recognized to completely preempt state law causes of action. In fact, "the Supreme Court has identified only three statutes that completely preempt related state-law claims: (1) § 301 of the Labor Management Relations Act . . . (2) § 1132 of the Employment Retirement Income Security Act of 1974 . . . and (3) §§ 85 and 86 of the National Bank Act . . . ." Dunlap v. G&L Holding Group Inc., 381 F.3d 1285, 1291 (11th Cir. 2004).

Ocwen cites 12 U.S.C. § 1463(g) as supporting its argument for complete preemption of the Plaintiff's claims in Count One of her Complaint. (Notice of Removal). However, Ocwen's argument does not address complete preemption, but addresses preemption <u>as a defense</u>. As stated previously, HOLA has not and cannot be found to completely preempt the state law causes of action alleged by the Plaintiff. In any event, as its subtitle suggests, 12 U.S.C. § 1463(g) preempts *only* state usury laws as they relate to the interest rates that may be charged by a federal thrift. The Plaintiff has not alleged a violation of any usury law of the State of Alabama in relation to the financing rates imposed upon the Plaintiff. Rather, the Plaintiff has alleged a violation of the duty to disclose the material terms of a transaction. (Complaint, Exhibit "A").

Further illuminating the limited scope of HOLA's preemptive effects, 12 C.F.R. § 560.2, which was promulgated by the Office of Thrift Supervision pursuant to HOLA, defines the scope of HOLA preemption. Predictably, 12 C.F.R. § 560.2 does not purport to preempt a state law action based upon a duty to disclose the material terms of a transaction. Instead, 12 C.F.R. § 560.2 "preempts (1) state laws that (2) either purport to regulate federal savings associations or otherwise materially affect their credit activities." <u>Gibson v. World Savings and Loan Ass'n</u>, 103 Cal. App. 4th 1291, 1302 (Cal.Ct.App. 2002).

12 C.F.R. § 560.2(c) (emphasis added) also expressly indicates that the following types of state law claims are not preempted:

> State laws of the following types *are not preempted* to the extent that they only incidentally affect the lending operations of Federal savings associations . . .:
>
> (1) *contract and commercial law*;
> (2) real property law;
> (3) homestead laws . . .;
> (4) *tort law*;
> (5) criminal law; and
> (6) any other law that [the Office of Thrift Supervision], upon review, finds:

(i) furthers a vital state int erest; and

(ii) either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 560.2(c) (emphasis added).

Ocwen's assertions regarding preemption do not address the concept of <u>complete</u> preemption, i.e., they do not address whether HOLA provides an exclusive cause of action for the Plaintiff's claims thereby allowing the removal of this action on that basis. Rather, Ocwen is addressing preemption as a <u>defense</u> to the Plaintiff's claims, which is not currently at issue.

Ocwen recently made this same argument (that HOLA completely preempts state law causes of action) in another federal district court in support of its removal of a state court action. <u>See</u> <u>McKenzie v. Ocwen Federal Bank FSB</u>, 306 F.Supp.2d 543 (D.Md. 2004). That court rejected the argument and remanded the case to state court. <u>McKenzie</u>, 306 F.Supp.2d at 506. In <u>McKenzie</u>, the plaintiff filed a complaint in state court alleging that Ocwen had violated various Maryland statutes regarding loans and had breached its contract with the plaintiff on the basis that Ocwen "adds fees and charges to the Plaintiff's account that are neither permitted by the loan agreement including some that are specifically prohibited by applicable law." <u>Id.</u> at 544. Ocwen filed a notice of removal, as in this case, based on both diversity and federal question jurisdiction. <u>Id.</u> The plaintiff filed a motion to remand based on the assertions that the district court had neither diversity nor federal question jurisdiction over his claims. <u>Id.</u>

Ocwen argued that HOLA and its relevant regulations preempted "all state laws purporting to regulate or limit mortgage servicing fees imposed by federal chartered banks." <u>Id.</u> The <u>McKenzie</u> court, however, held that while HOLA <u>may</u> preempt the state laws on which the plaintiff relied, the provisions of HOLA did not provide an exclusive cause of action and, thus, removal was not justified. <u>Id.</u> at 546.

Finally, Ocwen's claim that "[s]tate law claims against federally chartered financial institutions premised on allegations of excessive finance and other charges are completely preempted and removable to federal court" is exaggerated. In support of this proposition, Ocwen cites <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1 (2003). However, <u>Beneficial</u> did not reach this conclusion. <u>See, e.g.</u>, <u>McKenzie v. Ocwen Federal Bank FSB</u>, 306 F.Supp.2d 543, 545 (D.MD. 2004) (stating that <u>Beneficial</u>'s holding is not so broad as to support Ocwen's assertions that "consumer claims instituted in state court that challenge regulated practices of federally chartered financial institutions are subject to removal").

The Court in <u>Beneficial</u> discussed complete preemption as it related to sections 85 and 86 of the National Bank Act. These two sections address the limits on interest rates that national banks may charge and prescribe remedies to borrowers who are charged higher rates than allowed. Interest rate limits are not at issue in the present case. Thus, the Court's holding in <u>Beneficial</u> regarding complete preemption under the National Bank Act does not extend to the present case.

HOLA does not and has never been recognized to completely preempt state law claims. Thus, removal of this case cannot be based on complete preemption. Plaintiff's Motion to Remand is thereby due to be granted.

**C.**   **Federal question jurisdiction does not exist in the present case because no substantial question of federal law is in dispute.**

Ocwen contends that the Plaintiff's "claims will necessarily 'turn on some construction of federal law'" and that federal question jurisdiction is therefore established. (Notice of Removal).

"[T]he fact that a state claim necessarily turns on a federal issue, or involves construction of a federal law, does not necessarily give rise to a federal question and confer removal jurisdiction on a federal court." <u>Austin v. American General Finance</u>, 900 F.Supp. 396, 399 (M.D. Ala. 1995) (citing <u>Merrell Dow Pharmaceuticals, Inc. v. Thompson</u>, 478 U.S. 804, 816-17 (1986)). Instead, "there

must be a substantial question of federal law in dispute" in order to confer federal question jurisdiction. Cook v. Chrysler Credit Corp., 174 B.R. 321, 326 (M.D. Ala. 1994). Consequently, the mere fact "that federal law *may* be the source or basis of the plaintiffs' state-law claims does not support removal." Id. (citing Gully v. First Nat'l Bank, 299 U.S. 109 (1936) (where plaintiff sought to enforce state statute, whose basis was federal law, federal court does not have jurisdiction and thus case was due to be remanded)) (emphasis added).

For sake of convenience, the Plaintiff will not re-argue whether the Plaintiff's claims arise under federal law and will simply refer the Court to the foregoing sections of this Motion and Brief. However, the Plaintiff emphasizes that the claims set out in her well-pleaded Complaint are based upon the statutory and common laws of the State of Alabama rather than any federal law(s). Nevertheless, even if a federal law was the source or basis of any of the Plaintiff's state law claims, the rights conferred thereunder certainly do not constitute any essential element of the Plaintiff's state law claims nor do they require the resolution of any substantial question of federal law. Consequently, the Plaintiff's well-pleaded Complaint does not state any claim whereunder a substantial federal question jurisdiction is triggered.

In light of the foregoing, federal question jurisdiction does not exist and the Plaintiff's Motion to Remand is due to be granted.

## III.    PLAINTIFF REQUESTS COSTS AND ATTORNEY'S FEES ASSOCIATED WITH THE REMOVAL OF THIS ACTION.

This Court has the authority under 28 U.S.C. § 1447(c) to include in an order remanding this case a requirement that the costs and fees associated with the removal of this case be paid to the Plaintiff. 28 U.S.C. § 1447(c). Because the Defendants have improperly removed this case, Plaintiff respectfully requests this Court to award her costs and attorney's fees associated with filing this motion to remand.

IV.  CONCLUSION

This case has been improperly removed from state court.  Diversity jurisdiction does not exist since there is not complete diversity among the defendants and the amount in controversy is less than $75,000.00.  The Plaintiff has alleged no federal cause of action in her Complaint and all claims in the Complaint have an independent state law basis.  For the above reasons, the Plaintiff's motion to remand is due to be granted.

WHEREFORE, the Plaintiff respectfully requests this Court to remand this action back to the Circuit Court of Shelby County, Alabama to award the Plaintiff fees and expenses incurred with respect to Ocwen's improper removal of this action, and for such other and further relief as this Court may deem just and proper.

R. Cooper Shattuck (SHATR5109)
Jane L. Calamusa (CALAJ5640)
Attorneys for Plaintiffs

OF COUNSEL:

ROSEN, COOK, SLEDGE, DAVIS,
SHATTUCK & OLDSHUE, P.A.
2117 Jack Warner Parkway (35401)
Post Office Box 2727
Tuscaloosa, Alabama  35403
Telephone:  (205) 344-5000
Facsimile:  (205) 758-8358

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading on the following counsel

in this proceeding by mailing same by United States mail, properly addressed and first class postage

prepaid, this 27th day of October, 2004.

To:    John E. Goodman, Esq.
       Benjamin M. Moncrief, Esq.
       Bradley, Arant, Rose & White, LLP
       One Federal Place
       1819 Fifth Avenue North
       Birmingham, AL  35203-2104

       Harold J. Engel, Esq.
       Reed Smith, LLP
       1301 K Street, N.W.
       Suite 1100 – East Tower
       Washington, DC  20005

       Robert A. Nicholas, Esq.
       Louis W. Schack, Esq.
       2500 One Liberty Place
       160 Market Street
       Philadelphia, PA  19103

       Brian P. Brooks
       O'Melveny & Myers, LLP
       1625 Eye Street, NW
       Washington, DC  20006-4001

       John N. Bolus, Esq.
       Maynard, Cooper & Gale, P.C.
       1901 – 6th Avenue North, Suite 2400
       Birmingham, AL  35203

       Malone-Gordon Mortgage and Investments, Inc.
       c/o Thomas R. Gordon
       4618 Northwood Lake Drive East
       Northport, AL  35473

                                        Jane L. Calamusa (CALAJ5640)

IN THE CIRCUIT COURT OF SHELBY COUNTY, ALABAMA

SYBILE LILLY                                      §
                                                  §
          PLAINTIFF,                              §
                                                  §
VS.                                               §     CIVIL ACTION NO. CV-2004- 912
                                                  §
OCWEN FEDERAL BANK, FSB;                          §
MOSS, CODILIS, STAWIARSKI,                        §
MORRIS, SCHNEIDER & PRIOR,                        §
L.L.P.; MALONE-GORDON                             §
MORTGAGE & INVESTMENTS, INC.;                     §
Fictitious Defendants A, B, C,...those            §
individuals, partnerships, corporations,          §
limited liability companies, or other legal       §
entities who are or have been mortgage            §
brokers, holders or servicers of the notes        §
and mortgages executed by the                     §
Plaintiff or who have otherwise                   §
attempted to collect the fees, finance            §
charges, and other penalties from                 §
Plaintiff,                                        §
                                                  §
          DEFENDANTS.                             §



## COMPLAINT

    1.    Plaintiff Sybile Lilly ("Plaintiff") is an individual over the age of 19 and resident of

Shelby County, Alabama.

    2.    Defendant Ocwen Federal Bank, FSB ("Ocwen") is a corporation doing business in

Shelby County, Alabama.

    3.    Defendant Moss, Codilis, Stawiarski, Morris, Schneider, & Prior, L.L.P. ("Moss,

Codilis"), is believed to be a limited liability partnership doing business in Alabama.

    4.    Defendant Malone-Gordon Mortgage and Investments, Inc. ("Malone-Gordon") is an

Alabama corporation doing business in Shelby County, Alabama.

EXHIBIT "A"

5.    Fictitious Defendants A, B, C, . . . are those individuals, partnerships, corporations, limited liability companies, or other legal entities who are or have been mortgage brokers, holders or servicers of the notes and mortgages executed by the Plaintiff or who have otherwise attempted to collect the fees, finance charges, and other penalties as more fully discussed below.

6.    Named and Fictitious Defendants are hereafter known collectively as "Defendants".

### FACTS

7.    Plaintiff executed a Note and Mortgage on Plaintiff's property located in Shelby County, Alabama.

8.    Malone-Gordon originated and closed the mortgage transaction.

9.    The Note and Mortgage were serviced and/or held by one or more Defendants.

10.    The servicing rights to this loan were transferred to one or more Defendants.

11.    Defendants improperly charged Plaintiff late fees when Plaintiff sent mortgage payments to the prior loan servicer.

12.    Defendants continued to charge Plaintiff late fees for these payments and other payments that were timely received.

13.    Defendants misapplied payments received from Plaintiff and otherwise miscalculated the amount owed by Plaintiff.

14.    Defendants improperly held payments received from Plaintiff until said payments were past due.

15.    Defendants improperly returned payments made by Plaintiff, causing Plaintiff's payments to be past due.

16.    Defendants improperly charged Plaintiff unidentified fees and penalties.

- 2 -

17.     Defendants improperly charged Plaintiff certain fees, finance charges, and penalties relating to foreclosure proceedings.

18.     As a result of being improperly charged certain fees and penalties, Defendants' misapplication of funds, and Defendants' miscalculation of amounts owed, Plaintiff was forced to enter into one or more forbearance agreements.

19.     Defendants charged excessive fees relating to these forbearance agreements.

20.     Defendants charged excessive fees relating to notices of default.

21.     Defendants improperly began foreclosure proceedings on Plaintiff's home as a result of Plaintiff's inability to pay the excessive fees and penalties charged by Defendants.

22.     Defendants charged excessive fees relating to these foreclosure proceedings in order to halt the foreclosure process and to allow Plaintiff to keep Plaintiff's home.

23.     Defendants force-placed insurance on Plaintiff's home when Plaintiff already had appropriate coverage on the home and offered proof of same.

24.     Defendants improperly reported the status and amount of Plaintiff's loan to various credit reporting agencies.

25.     Defendants attempted to collect and did collect money from Plaintiff which was not due.

26.     Defendants provided inconsistent payoff amounts to Plaintiff, or otherwise refused to provide payoff amounts upon request.

27.     Defendants failed to disclose to Plaintiff that Plaintiff would be charged any and/or all of these fees, finance charges, and/or penalties, prior to the closing of Plaintiff's loan which they had a duty to disclose.

## COUNT ONE

28.    The allegations of paragraphs 1 through 27 are incorporated herein as though set forth again in full.

29.    Defendants failed to disclose to Plaintiff that Plaintiff would be charged improper or otherwise excessive fees, finance charges, and/or penalties in connection with Plaintiff's note and mortgage.

30.    Defendants had a duty to disclose that Plaintiff would be charged these fees, finance charges, and/or penalties.

31.    As a result of Defendants' failure to disclose this information, Plaintiff was damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs, and such other and further relief as this Court may deem just and proper.

## COUNT TWO

32.    The allegations of paragraphs 1 through 31 are incorporated herein as though set forth again in full.

33.    Defendants intentionally, recklessly, wantonly, maliciously and/or negligently misrepresented the fees, finance charges, and penalties which were, were to be, or could be assessed and collected from Plaintiff.

34.    Said representations were made with the intent that Plaintiff rely upon them.

35.    Plaintiff relied on said representations.

36.    Defendants benefited from Plaintiff's reliance.

37.    As a result of said conduct, Plaintiff was damaged.

- 4 -

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs, and such other and further relief as this Court may deem just and proper.

## COUNT THREE

38.     The allegations of paragraphs 1 through 37 are incorporated herein as though set forth again in full.

39.     Defendants intentionally, recklessly, wantonly, maliciously and/or negligently misrepresented that they would promptly apply payments received to Plaintiff's account.

40.     Said representations were made with the intent that Plaintiff rely upon them.

41.     Plaintiff relied on said representations.

42.     Defendants benefited from Plaintiff's reliance.

43.     As a result of said conduct, Plaintiff was damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs, and such other and further relief as this Court may deem just and proper.

## COUNT FOUR

44.     The allegations of paragraphs 1 through 43 are incorporated herein as though set forth again in full.

45.     Defendants intentionally, recklessly, wantonly, maliciously and/or negligently suppressed the correct amount due from Plaintiff pursuant to the terms of Plaintiff's note and mortgage.

46.    As a result of not being made aware of such suppressed material facts, Plaintiff entered into the loan transaction with Defendants and/or delayed refinancing those contracts.

47.    Defendants benefited from Plaintiff's reliance.

48.    As a result of said conduct, Plaintiff was damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs, and such other and further relief as this Court may deem just and proper.

## COUNT FIVE

49.    The allegations of paragraphs 1 through 48 are incorporated herein as though set forth again in full.

50.    A contract existed between Plaintiff and Defendants.

51.    Defendants breached their agreement with Plaintiff.

52.    As a result of said breach, Plaintiff was damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs, attorney's fees, and such other and further relief as this Court may deem just and proper.

## COUNT SIX

53.    The allegations of paragraphs 1 through 52 are incorporated herein as though set forth again in full.

54.    Defendants were negligent in the handling of Plaintiff's loan.

55.    As a result of said negligence, Plaintiff was damaged.

- 6 -

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs, and such other and further relief as this Court may deem just and proper.

## COUNT SEVEN

56.    The allegations of paragraphs 1 through 55 are incorporated herein as though set forth again in full.

57.    Defendants were wanton in the handling of Plaintiff's loan.

58.    As a result of said wantonness, Plaintiff was damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs, and such other and further relief as this Court may deem just and proper.

## COUNT EIGHT

59.    The allegations of paragraphs 1 through 58 are incorporated herein as though set forth again in full.

60.    Defendants intentionally inflicted emotional distress upon Plaintiff by threatening to foreclose on Plaintiff's property for failure to pay fees and charges which Defendants had no right to collect and thus had no right to foreclose, and otherwise made representations of foreclosure when they had no right to affect Plaintiff's ownership in the property.

61.    Defendants intentionally inflicted emotional distress upon Plaintiff by harassing Plaintiff by telephone and mail regarding the status of Plaintiff's loan and fees and charges which were being applied to Plaintiff's account improperly.

62.    Such conduct was outrageous and in contravention of good conduct and good faith and should thus be deemed repugnant by our society.

63.    As a result of said conduct by Defendants, Plaintiff was damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs, and such other and further relief as this Court may deem just and proper.

## COUNT NINE

64.    The allegations of paragraphs 1 through 63 are incorporated herein as though set forth again in full.

65.    The Defendants have converted to their own use the monies as paid by Plaintiff, said monies being the property of Plaintiff.

66.    As a result of said conduct by Defendants, Plaintiff was damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs, and such other and further relief as this Court may deem just and proper.

## COUNT TEN

67.    The allegations of paragraphs 1 through 66 are incorporated herein as though set forth again in full.

68.    The Defendants owe Plaintiff for money paid by Plaintiff to the Defendants by mistake.

69.    As a result of said payments, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs, and such other and further relief as this Court may deem just and proper.

## COUNT ELEVEN

70.    The allegations of paragraphs 1 through 69 are incorporated herein as though set forth again in full.

71.    Defendants intentionally, recklessly, wantonly, maliciously and/or negligently caused negative and untruthful information regarding Plaintiff's credit or financial condition to be published to third parties.

72.    This information was false and defamatory.

73.    As a result, Plaintiff was unable to refinance or were otherwise damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs, and such other and further relief as this Court may deem just and proper.

## COUNT TWELVE

74.    The allegations of paragraphs 1 through 73 are incorporated herein as though set forth again in full.

75.    Defendants conspired with each other to commit the wrongs alleged herein.

76.    As a result of said conduct by Defendants, Plaintiff was damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount exceeding the

minimum jurisdictional threshold of this Court, for compensatory and punitive damages, court costs,

and such other and further relief as this Court may deem just and proper.

_____
R. Cooper Shattuck (SHA030)
Jane L. Calamusa (CAL056)
Attorneys for Plaintiff

OF COUNSEL:

ROSEN, COOK, SLEDGE, DAVIS,
CADE & SHATTUCK, P.A.
2117 Jack Warner Parkway (35401)
Post Office Box 2727
Tuscaloosa, Alabama 35403
Telephone: (205) 344-5000
Facsimile: (205) 758-8358

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

_____
R. Cooper Shattuck (SHA030)
Jane L. Calamusa (CAL056)
Attorneys for Plaintiff

OF COUNSEL:

ROSEN, COOK, SLEDGE, DAVIS,
CADE & SHATTUCK, P.A.
2117 Jack Warner Parkway (35401)
Post Office Box 2727
Tuscaloosa, Alabama 35403
Telephone: (205) 344-5000
Facsimile: (205) 758-8358

**Plaintiff's Address:**

Ms. Sybile Lilly
70 Dana Drive
Montevallo, Alabama  35115


**Defendants' Addresses:**

Ocwen Federal Bank, FSB
12650 Ingenuity Drive
Orlando, Florida 32826

Moss, Codilis, Stawiarski, Morris, Schneider, & Prior, L.L.P.
P.O. Box 785051
Orlando, Florida 32878-5051

Malone-Gordon Mortgage and Investments, Inc.
c/o Thomas R. Gordon
1529 23rd Avenue
Tuscaloosa, Alabama 35401

WHEN RECORDED MAIL TO:

MALONE/GORDON MORTGAGE &
INVESTMENTS, INC.
1529 23RD AVENUE
TUSCALOOSA, ALABAMA 35401

Inst # 1997-29286

Loan No. 2976843

09/11/1997-29286
11:41 AM CERTIFIED
SHELBY COUNTY JUDGE OF PROBATE

TP/1926

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on AUGUST 21, 1997
The grantor is ALEX W LILLY, A MARRIED MAN AND SYBILE D. LILLY , A MARRIED
WOMAN HUSBAND AND WIFE AS JOINT TENANTS
                                                    ("Borrower"). This Security Instrument is given to
MALONE/GORDON MORTGAGE & INVESTMENTS, INC., A ALABAMA CORPORATION

which is organized and existing under the laws of ALABAMA                , and whose address is
1529 23RD AVENUE, TUSCALOOSA, ALABAMA 35401

                                ("Lender"). Borrower owes Lender the principal sum of
THIRTY EIGHT THOUSAND THREE HUNDRED FIFTY AND 00/100***********
Dollars (U.S. $ 38,350.00       ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on SEPTEMBER 1, 2012        . This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and
assigns, with power of sale, the following described property located in
                                SHELBY                                  County, Alabama:

LOT 17, ACCORDING TO THE SURVEY OF RIPPLE CREEK ESTATES, PHASE 2, FIRST ADDITION,
AS RECORDED IN MAP BOOK 14, PAGE 39, IN THE PROBATE OFFICE OF SHELBY COUNTY,
ALABAMA.

ALEX W. LILLY IS ONE AND THE SAME PERSON AS ALEX LILLY.
SYBILE D. LILLY IS ONE AND THE SAME PERSON AS SYBIL LILLY.


which has the address of  70 DANA DRIVE, MONTEVALLO
                                 [Street]                                    [City]

Alabama    35115                           ("Property Address");
           [Zip Code]

        TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with
all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now
or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.
All of the foregoing is referred to in this Security Instrument as the "Property."
        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

ALABAMA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT                         Form 3001 9/90
Document Systems, Inc. (800) 649-1362                    Page 1 of 7

AL.MTI                                          ORIGINAL

EXHIBIT "B"

Lilly  0004

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower

---

ALABAMA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT
Document Systems, Inc. (800) 649-1362 · Page 2 of 7

Form 3001 9/90

AL-MTG

ORIGINAL

subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

---

ALABAMA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT                                    Form 3001 9/90
Document Systems, Inc. (800) 649-1362                    Page 3 of 7

IL MTG

ORIGINAL

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full

ALABAMA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT          Form 3001 9/90
Document Systems, Inc (800) 649-1362       Page 4 of 7
AL M1G

ORIGINAL

Lilly 0007

of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer.  The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances.  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in      SHELBY      County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument

ALABAMA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT                                                Form 3001 9/90
Document Systems, Inc (800) 649-1362                                 Page 5 of 7

\\L H111

ORIGINAL

and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. **Waivers.** Borrower waives all right of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _____  (Seal)
                                ALEX W LILLY                - Borrower

                                Social Security Number 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

_____    _____  (Seal)
                                SYBILE D. LILLY            - Borrower

                                Social Security Number 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

                             _____  (Seal)
                                                          - Borrower

                                Social Security Number _____

                             _____  (Seal)
                                                          - Borrower

                                Social Security Number _____

                             _____  (Seal)
                                                          - Borrower

                                Social Security Number _____

                             _____  (Seal)
                                                          - Borrower

                                Social Security Number _____

ALABAMA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT                    Form 3001 9/90
Document Systems, Inc. (800) 649-1362                Page 6 of 7

AL.MTG                                    ORIGINAL

Lilly  0009

STATE OF    ALABAMA          JEFFERSON       County ss:  /SHELBY/

   On this  21ST      day of    AUGUST, 1997                    , I, the undersigned authority
                                                               a Notary Public in and for said county
and in said state, hereby certify that  ALEX W LILLY, AND SYBILE D. LILLY

                                                               , whose name(s)
        ARE     signed to the foregoing conveyance, and who   ARE     known to me, acknowledged
before me that, being informed of the contents of the conveyance,  THEY   executed the same voluntarily
and as    THEIR      act on the day the same bears date,
    Given under my hand and seal of office this the  21ST    day of  AUGUST, 1997

My Commission expires:  10 -31-99

                                                               _____
                                                                              Notary Public

This instrument was prepared by

Larry R. Newman
3141 Lorna Road, Suite 202
Birmingham, Alabama 35216-4507

——————————————————— [Space Below This Line For Acknowledgement] ———————————————————

                        Inst # 1997-29286

                        09/11/1997-29286
                        11:41 AM CERTIFIED
                        SHELBY COUNTY JUDGE OF PROBATE
                        007 SHA      81.10

ALABAMA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT                Form 3001 9/90
Document Systems, Inc. (800) 649-1362            Page 7 of 7

AL 6114II                            ORIGINAL

Lilly 0010

IN THE CIRCUIT COURT OF FAYETTE COUNTY, ALABAMA

LEE AND KIMBERLY DOWDLE                )
                                        )
        PLAINTIFF                       )
                                        )
VS.                                     )        CASE NO. CV 99-082
                                        )
AURORA LOAN SERVICES, ET AL             )
                                        )
        DEFENDANTS                      )

## ORDER

This matter having come before this Court on the Plaintiffs' Motion to Show Cause Why Defendant Should Not Be Held in Contempt and Motion for Sanctions and the Court having heard the arguments of the parties, the Court finds as follows:

It is apparent to this Court that Defendant Ocwen Federal Bank, FSB, has exhibited a callous disregard for the Orders of this Court and the findings of the Alabama Supreme Court and has intentionally ignored these Orders and findings. It is also apparent to this Court that Ocwen has acted in bad faith in providing responses to the discovery propounded by the Plaintiffs. Ocwen has made multiple attempts to evade responding to this discovery. These attempts have resulted in the filing of several motions to compel by the Plaintiffs, culminating in a motion for sanctions and an additional supplemental filing by the Plaintiff. The discovery disputes in this case have been ongoing for four years.

The Court is in receipt of Ocwen's most recent filing of a status report on this discovery. This report was not requested or ordered and the Court cannot and will not consider this *ex parte* submission.

EXHIBIT "C"

In addition, the Plaintiffs have demonstrated to the Court that Ocwen has previously made misrepresentations to this Court about (1) its ability to produce the information requested by the Plaintiffs and (2) the scope of the discovery produced to the Plaintiffs.

It is this Court's belief, in light of Ocwen's disregard of the Orders of this Court, that monetary sanctions, along with additional sanctions, are necessary to impose upon Ocwen the seriousness with which this Court, views the importance of the obedience of its Orders and the truthfulness of representations made to the Court and other parties.  Such sanctions are also necessary to demonstrate to Ocwen, and any other parties who may consider abusing the discovery process, that constant delays and evasive responses will not be treated lightly.  Based upon Ocwen's repeated failure to respond to this discovery, the Court believes that the sanctions imposed against Ocwen should be severe enough to discourage these dilatory tactics in the future. Pursuant to Rule 37 of the Alabama Rules of Civil Procedure, the Court imposes the following sanctions upon Ocwen for its gross abuse of the discovery process and its continued failure to produce the documents and other information requested by the Plaintiffs:

1.  Ocwen is hereby ORDERED to pay the attorneys' fees and expenses of Plaintiffs' counsel incurred as a result of addressing any discovery matter relating to Ocwen's failure to produce requested information.  This includes time spent reviewing documents produced by Ocwen to determine whether said documents were responsive to requests or were complete. Plaintiffs' counsel is hereby ORDERED to submit to the Court within 10 days a list of all such fees and expenses.  The Court will enter a subsequent Order regarding those fees and expenses.

2.  Ocwen is hereby ORDERED to fully respond to any outstanding discovery (or any such modification in scope of this discovery as may be agreed between Plaintiffs and Ocwen) in this

matter within twenty-one (21) days of the date of this Order, at no cost to Plaintiffs. For each day thereafter that Ocwen has not fully responded to the discovery requests propounded by the Plaintiffs, Ocwen will be assessed a penalty of $1,000.00 per day. When Ocwen has fully responded to the outstanding discovery requests, Ocwen shall certify to this Court, in writing, that Ocwen has fully responded to the discovery requests. If Plaintiffs' counsel disagrees with Ocwen's representation, the Court will appoint a Special Master to review the requests and responses. Ocwen will bear all reasonable costs and expenses relating to this inquiry. If the Special Master determines that Ocwen has fully complied with the discovery requests, Plaintiffs will pay the fees and expenses of the Special Master. If the Special Master determines that Ocwen has not fully complied with the discovery requests, Ocwen will thereafter be assessed the sum of $5,000.00 per day until the Special Master determines that Ocwen has fully complied with the responses. Ocwen will also pay the fees and expenses of the Special Master associated with same. If Ocwen thereafter continues to fail to comply, the Plaintiffs may petition this Court for further relief. Plaintiffs may petition this Court for further relief, including but not limited to the entry of a Judgment on the issue of liability.

DONE and ORDERED this 16th day of June, 2004.

James Moore, Circuit Judge
24th Judicial Circuit

cc: All Counsel of Record
    All Unrepresented Parties